**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| **HUSSEIN ASSAF,**<br><br>      **Plaintiff,**<br><br>vs.<br><br>**TRANS UNION LLC,**<br><br>      **Defendant.** | Case Number: _____<br><br>**Jury Trial Demanded** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **HUSSEIN ASSAF**, by Counsel, and for his Complaint against the Defendant, **TRANS UNION LLC**, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this Complaint for willful violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") against Defendant Trans Union, LLC after TransUnion inaccurately reported to third parties that Plaintiff appeared on the U.S. Treasury Department's Office of Foreign Assets Control, Specifically Designated National and Blocked Persons ("OFAC") list.

2. That list contains the names of terrorists, drug lords, human traffickers, and other criminals and dangerous individuals the U.S. Government prohibits Americans from doing business with. Stating that a person's name appears on the OFAC list, or even that it *may* appear on the list is devasting to a person's credit prospects.

3. Since businesses cannot deal with individuals on the OFAC list, when TransUnion falsely tells businesses that consumers like Plaintiff may appear the list all credit opportunities shut down completely.

4. TransUnion provides such OFAC alerts on credit reports it provides to potential creditors, and did so with the credit reports about Plaintiff.

5. TransUnion's OFAC alerts are notoriously faulty. They appear frequently, yet are never accurate. In other words, every time TransUnion creates a report with an OFAC alert on it, it is falsely branding the consumer who is the subject of the report as a criminal.

6. TransUnion has long been aware of the problems with its OFAC alerts, as it has been sued repeatedly about it. Most notably, in the recent Supreme Court case *Trans Union LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court held that plaintiffs about whom TransUnion stated were "potential" matches to names on the OFAC list suffered sufficient harm to sue TransUnion in federal court for violations of the accuracy standards of the FCRA. *Id.* at 2208–09.

7. Despite having lost such claims all the way through nearly ten years of litigation in *Ramirez*, TransUnion changed nothing about how it includes OFAC alerts in consumer reports.

8. The FCRA requires consumer reporting agencies ("CRAs") like TransUnion to utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

9. TransUnion fell short of such procedures when it inaccurately reported to

several potential creditors of Plaintiff that his name was a potential match to a name on the OFAC list. This is inaccurate, as Plaintiff does not appear on the OFAC list.

10. Such reporting damaged Plaintiff's reputation, and prevented him from engaging in credit transactions for fear of TransUnion reporting to those potential creditors that his name may match one on the OFAC list.

11. Had TransUnion used reasonable procedures designed to assure the maximum possible accuracy of the information it reports, such as checking the full identifiers, including comparing the first and last name, for a consumer before including an OFAC alert on a consumer report, it would have never stated that Plaintiff's name was a potential match to one on the OFAC list.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides within the boundaries of the District of South Carolina.

## PARTIES

14. Plaintiff Hussein Assaf is a natural person who resides in Honea Path, South Carolina. He is a "consumer" as defined in 15 U.S.C. § 1681a(c).

15. Defendant TransUnion is headquartered in Illinois and does business in Commonwealth Virginia through its registered agent.

16. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

3

## FACTUAL ALLEGATIONS

### *TransUnion Never Accurately Reports OFAC Alerts*

17. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

18. "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke*, 2011 WL 1085874, at *4.

19. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish

>procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

20.     An OFAC alert is a specific type of data provided by consumer reporting agencies on credit reports signifying that the subject of the report is purportedly included in the list of the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons, which includes terrorists, money launderers and narcotics traffickers.

21.     There is nothing special or unique about OFAC data as it pertains to the FCRA. If OFAC information appears on a consumer report, Trans Union must use reasonable procedures designed to ensure that information is maximally accurate.

22.     TransUnion has long been aware of this fact, as the Third Circuit long ago advised it that "OFAC information included in a consumer report and sold about a consumer falls within the purview of the FCRA, and the 'maximum possible accuracy standard.' Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010).

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

5

23. Despite this extensive knowledge of the FCRA's application to OFAC data, TransUnion treats OFAC information as if it has no obligation to ensure that such information is accurately reported.

24. For example, with Plaintiff, TransUnion reported:

[T]he name that appears on your TransUnion credit file "HUSSEIN ASSAF" is considered a *potential* match to information listed on the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") Database.

The OFAC record that is considered a *potential* match to the name on your credit file is:

MATCHING NAME: ASSAF, Hosein SOURCE: SDN UID: 24520 NAME: YAZBAK, Muhammad TITLE: Head of the Judicial Council of Hizballah PROGRAMLIST: SDGT IDLIST: IDTYPE: Gender IDNUMBER: Male; IDTYPE: Additional Sanctions Information - IDNUMBER: Subject to Secondary Sanctions Pursuant to the Hizballah Financial Sanctions Regulations AKALIST: TYPE: a.k.a. CATEGORY: strong AKA: YAZBIK, Muhammad; TYPE: a.k.a. CATEGORY: strong AKA: ASSAF, Hosein; TYPE: a.k.a. CATEGORY: strong AKA: YAZBEK, Mohammad; TYPE: a.k.a. CATEGORY: strong AKA: YAZBECK, Mohammad ADDRESSLIST: ADDRESS: Lebanon DATEOFBIRTHLIST: DOB: 1950 (main) PLACEOFBIRTHLIST: POB: Bodai, Lebanon (main) REMARKS: (Linked To: HIZBALLAH).

(italics in original).

25. Other than that the name "Assaf" appears in a few places on this list, none of this information matches any of Plaintiff's personal information. Under the FCRA's burden of maintaining maximum possible accuracy, TransUnion can have no basis at all for including information like this in Plaintiff's file or placing it on a TransUnion report. Yet TransUnion did both.

6

26. TransUnion will no doubt defend itself by pointing to the italic notation that Plaintiff is a "*potential*" match to the individual on the OFAC list, but that will not save TransUnion. The Supreme Court rejected TransUnion's argument that such a qualifier renders the reporting harmless in *Ramirez*, noting that "[t]he harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist.' In other words, the harm from a misleading statement of this kind bears a sufficiently close relationship to the harm from a false and defamatory statement." *TransUnion LLC v. Ramirez*, __ U.S. __, 141 S. Ct. 2190, 2209 (2021).

27. To make matters worse, suggesting Plaintiff is a potential member of Hizballah is particularly hurtful. In 2015 and 2016, when Hizballah laid siege to the city of Madaya, Syria, its atrocities lead to the deaths of several members of Plaintiff's family.

28. Not surprisingly, these events make Plaintiff sensitive to that group generally, but he is especially emotional regarding TransUnion's statements to others that he is tied to that organization.

29. What is noteworthy about the OFAC list is that it is nothing special or secret. The U.S. Treasury posts the list online, at https://www.treasury.gov/ofac/downloads/sdnlist.pdf, and also provides a search feature, at https://sanctionssearch.ofac.treas.gov/.

30. Anyone can view the list or use the search feature, so any business or potential grantor of credit has the ability to check the members of the list against the personal information of a consumer applying for credit.

31. TransUnion could also use such a search feature before reporting OFAC information, but it does not do that.

32. In *Ramirez*, the district court found in certifying a class of consumers who TransUnion inaccurately reported matched a person on the OFAC list that TransUnion failed to present a single example of a report that accurately matched that consumer to a person on the OFAC list. *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 422 (N.D. Cal. 2014).

### *Plaintiff Learns TransUnion Is Reporting OFAC Information About Him*

33. After having difficulties obtaining credit, Plaintiff obtained his TransUnion consumer report in early 2020.

34. In viewing that report, Plaintiff noted the OFAC information identified above. All of that information, other than the name "Assaf" is inaccurately attributed to Plaintiff.

35. There is extensive inquiry history on Plaintiff's TransUnion report, meaning TransUnion reported that Plaintiff was a potential match to someone on the OFAC list to all of these creditors.

36. This reporting by TransUnion was false. Plaintiff is not on the OFAC list.

37. No one needed to tell TransUnion that these OFAC alerts about Plaintiff were false and inaccurate, as TransUnion can see from the OFAC list itself that Plaintiff is not on it.

38. Yet, TransUnion took no steps to ensure that no OFAC alerts appeared in Plaintiff's file or on any reports it issued about Plaintiff.

*Plaintiff Suffered Actual Harm*

39. As a result of Defendant's reporting of the inaccurate information about Plaintiff, he has suffered damages, including, but not limited to:

   a. Stress associated with the inability to obtain credit;

   b. Withdrawal from credit and job market because of fear that TransUnion will report to creditors that Plaintiff is on the OFAC list; and

   c. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

*Defendant Acted Willfully*

40. TransUnion's conduct was willful and carried-out with reckless disregard for a consumer's rights under the FCRA.

41. By example only, and without limitation, TransUnion's conduct was willful because, by using a bare-minimum matching process for applying OFAC data to consumers' files and reports, TransUnion knew it was providing far more inaccurate OFAC alerts than it was accurate ones.

42. In fact, as *Ramirez* shows, TransUnion is incapable of furnishing a single accurate OFAC match.

43. TransUnion's continued furnishing of such purported matches, even after the court in *Ramirez* certified a class for consumers with inaccurate OFAC alerts and found that TransUnion had never provided an accurate OFAC alert is textbook evidence that TransUnion violated the FCRA either knowingly or recklessly.

44. In addition, Defendant's willful conduct will also be established by the following:

9

      a)     The FCRA was enacted in 1970, Defendant has had decades to become compliant;

      b)     Defendant is a company with access to legal advice through its own general counsel's office and/or outside litigation counsel. It therefore had ample resources to create compliant procedures for creating consumer reports.

      c)     Defendant knew or had reason to know that its conduct was inconsistent with FTC and CFPB guidance, case law, and the plain language of the FCRA.

      d)     Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

      e)     Defendant's violations of the FCRA were repeated and systematic.

      f)     Defendant's FCRA violations were carried-out according to Defendant's established policies and procedures; the violations herein alleged are not accidental or isolated to Plaintiff.

## CLAIMS FOR RELIEF

## COUNT ONE – VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)

45.     Plaintiff realleges and incorporates paragraphs 1 through 44 above as if fully set out herein.

46. TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff by erroneously stating he was a potential match to a person on the OFAC list.

47. TransUnion provided reports about Plaintiff that contained inaccurate notations that Plaintiff was a potential match to an individual on the OFAC list.

48. The use of reasonable procedures by TransUnion would have resulted in a report that did not contain any mention of the OFAC list.

49. As a result of TransUnion's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages including, by example, loss of credit opportunities, withdrawal from the credit market, frustration, stress, mental distress, and lack of sleep.

50. The violations of TransUnion were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative TransUnion was negligent, which entities Plaintiff to recovery under 15 U.S.C. § 1681o.

51. Plaintiff is entitled to recover actual damages, punitive damages, costs and attorneys' fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff moves for an award for actual, statutory and punitive damages for TransUnion's violations of the FCRA, as well as his attorneys' fees and costs against Defendant; for pre-judgment and post judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

11

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury for all issues so triable.

        Respectfully submitted,

        */s/ Penny Hays Cauley*
        Penny Hays Cauley, Fed. ID No. 10323
        William K. Geddings, Fed. ID No. 12584
        HAYS CAULEY, P.C.
        1303 West Evans Street
        Florence, SC 29501
        Telephone: (843) 665-1717
        Fax: (843) 665-1718 Facsimile
        Email: phc917@hayscauley.com
        Email: will@hayscauley.com

        Leonard A. Bennett (*pro hac vice forthcoming*)
        Craig C. Marchiando (*pro hac vice forthcoming*)
        **CONSUMER LITIGATION ASSOCIATES, P.C.**
        763 J. Clyde Morris Blvd., Suite 1-A
        Newport News, VA 23601
        Telephone: (757) 930-3660
        Fax: (757) 930-3662
        Email: lenbennett@clalegal.com
        Email: craig@clalegal.com
        ***Attorneys for Plaintiff***

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o Prentice-Hall Corporation System, Inc. - Registered Agent
1703 Laurel Street
Columbia, SC 29201